IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GEORGE ASSAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| PENN VIRGINIA CORPORATION, JOHN A. BROOKS, DAVID GEENBERG, MICHAEL HANNA, DARIN G. HOLDERNESS, JERRY R. SCHUYLER, FRANK POTTOW, DENBURY RESOURCES INC., DRAGON MERGER SUB INC., and DR SUB LLC, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on October 28, 2018 (the "Proposed Transaction"), pursuant to which Penn Virginia Corporation ("Penn Virginia" or the "Company") will be acquired by Denbury Resources Inc. ("Denbury Resources") and its affiliates.

2. On October 28, 2018, Penn Virginia's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Denbury Resources, Dragon Merger Sub Inc., and DR Sub LLC (collectively, "Denbury"). Pursuant to the terms of the Merger Agreement, shareholders of Penn Virginia will receive 18.3454 shares of Denbury Resources common stock, $25.86 in cash and

12.4 shares of Denbury Resources common stock, or $79.80 in cash for each share of Penn Virginia common stock they own.

3. On January 16, 2019, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Penn Virginia common stock.

9. Defendant Penn Virginia is a Virginia corporation and maintains its principal executive offices at 16285 Park Ten Place, Suite 500, Houston, Texas 77084. Penn Virginia's common stock is traded on the NasdaqGS under the ticker symbol "PVAC."

10. Defendant John A. Brooks is President, Chief Executive Officer, and a director of the Company.

11. Defendant David Geenberg ("Geenberg") is a director of the Company.

12. Defendant Michael Hanna is a director of the Company.

13. Defendant Darin G. Holderness is a director of the Company.

14. Defendant Jerry R. Schuyler is a director of the Company.

15. Defendant Frank Pottow is a director of the Company.

16. The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

17. Defendant Denbury Resources is a Delaware corporation and a party to the Merger Agreement.

18. Defendant Dragon Merger Sub Inc. is a Virginia corporation and a party to the Merger Agreement.

19. Defendant DR Sub LLC is a Virginia limited liability company and a party to the Merger Agreement.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

20. Penn Virginia is a pure-play independent oil and gas company engaged in the development and production of oil, NGLs, and natural gas, operating in the Eagle Ford shale in south Texas.

21. On October 28, 2018, Penn Virginia's Board caused the Company to enter into the Merger Agreement.

22. Pursuant to the terms of the Merger Agreement, shareholders of Penn Virginia will receive 18.3454 shares of Denbury Resources common stock, $25.86 in cash and 12.4 shares of Denbury Resources common stock, or $79.80 in cash for each share of Penn Virginia common stock they own.

23. According to the press release announcing the Proposed Transaction:

Denbury Resources Inc. (NYSE: DNR) ("Denbury") and Penn Virginia Corporation (NASDAQ: PVAC) ("Penn Virginia") today announced that they have entered into a definitive merger agreement pursuant to which Denbury will acquire Penn Virginia in a transaction valued at approximately $1.7 billion, including the assumption of debt. The consideration to be paid to Penn Virginia shareholders will consist of 12.4 shares of Denbury common stock and $25.86 of cash for each share of Penn Virginia common stock. Penn Virginia shareholders will be permitted to elect all cash, all stock or a mix of stock and cash, subject to proration, which will result in the aggregate issuance of approximately 191.6 million Denbury shares and payment of $400 million in cash. The transaction was unanimously approved by the board of directors of each company, and Penn Virginia shareholders holding 15% of the outstanding shares signed a voting agreement to vote "for" the transaction. . . .

TRANSACTION DETAILS

Under the terms of the definitive merger agreement, shareholders of Penn Virginia will receive, subject to proration, a combination of 12.4 shares of Denbury common stock and $25.86 of cash for each share of Penn Virginia common stock, representing consideration to each Penn Virginia shareholder of $79.80 per share based on the closing price of Denbury common stock on October 26, 2018. Penn Virginia shareholders will have the option to receive all stock or all cash, subject to proration such that the overall mix of consideration does not result in more or less than $400 million in cash being paid. The overall mix of consideration will be 68% Denbury common stock and 32% cash. The stock portion of the consideration received by Penn Virginia's shareholders is expected to be tax-free. Upon closing of the transaction, Denbury stockholders will own approximately 71% of the combined company, and Penn Virginia shareholders will own approximately 29%.

Denbury intends to finance the transaction with a combination of equity (issued to Penn Virginia shareholders), debt and cash on hand. Denbury has received a financing commitment letter from JPMorgan Chase Bank, N.A. for a new $1.2

billion senior secured bank credit facility, replacing its current facility under which no amounts are currently outstanding, and a $400 million senior secured second lien bridge financing. The two new debt financings will be used to fully or partially fund the $400 million cash portion of the consideration, potentially retire and replace Penn Virginia's $200 million second lien term loan, replace Penn Virginia's existing bank credit facility, which had $283 million drawn and outstanding as of September 30, 2018, and pay fees and expenses.

The transaction, which is expected to close in the first quarter of 2019, is subject to the approval of Penn Virginia shareholders and is subject to approval by Denbury's stockholders of the issuance of common stock and an amendment to Denbury's charter to increase its authorized shares. The transaction is also conditioned on clearance under the Hart-Scott Rodino Act and other customary closing conditions.

The merger agreement contains a covenant that upon its closing, Denbury's board of directors will be expanded from eight directors to ten directors, to include two independent members of Penn Virginia's board of directors who are mutually agreed upon by Denbury and Penn Virginia.

***Shareholder Opposition to the Proposed Transaction***

24. On January 17, 2019, Mangrove Master Fund L.P. ("Mangrove"), which owned approximately 11.5% of the Company's outstanding shares at that time, filed a proxy statement with the SEC (the "Mangrove Proxy") seeking the Company's stockholders' support to vote against the approval of the Proposed Transaction.

25. According to the Mangrove Proxy, beginning on October 29, 2018, Mangrove had numerous discussions with the Company's officers and directors to express its dissatisfaction with the Proposed Transaction.

26. On October 30, 2018, Mangrove filed a Schedule 13D with the SEC, stating:

Mangrove Partners is evaluating Denbury Resources Inc.'s proposed acquisition of Penn Virginia as well as the market's reaction following the announcement of the transaction. While a sale of the company could be attractive for Penn Virginia's shareholders, we believe that a control transaction should include the payment of a sustainable premium to shareholders of the target company. We also believe that Penn Virginia's standalone prospects are currently undervalued in the marketplace and note the Company's strong operational performance, highly economic well results, significant cash flow, and guidance for 40%-60% production growth in 2019.

27.     On November 14, 2018, Mangrove filed an amended Schedule 13D, stating:

> On November 13, 2018, representatives from Mangrove Partners met with senior management from both Denbury Resources Inc. and [Penn Virginia]. During this meeting, Mangrove shared its belief that while [Penn Virginia] is a compelling standalone investment, Denbury Resources and [Penn Virginia], as a combined entity, is not of interest to Mangrove Partners. Mangrove also stated its belief that it is not alone in disliking this transaction, as other shareholders of the Issuer have reached out to Mangrove to express their dissatisfaction. Furthermore, Mangrove notes that Denbury shareholders appear to have expressed unhappiness with the deal by driving Denbury's shares down over 40% in the 12 trading days since its announcement. Mangrove believes that the market's reaction goes well beyond the typical arbitrage pressures following the announcement of a stock-for-stock transaction and reflects a rebuke of the transaction itself. Mangrove Partners informed the management teams that it intends to vote against the proposed transaction. Mangrove also stated that it is planning to solicit proxies against the transaction, has hired SEC counsel, and is currently interviewing proxy solicitors.

28.     On November 28, 2018, Mangrove filed an amended Schedule 13D, stating:

> On November 26, 2018, representatives from Mangrove Partners spoke with the Co-Chairman of the Board of Directors of the Issuer and its CEO. During this call, Mangrove called on the Issuer to work with Denbury Resources, Inc. to terminate the proposed transaction. Should the Issuer and Denbury fail to agree to a mutual termination, Mangrove intends to vote against the transaction and to file its own proxy statement to solicit votes against the proposed deal. As part of its preparation, Mangrove has hired Saratoga Proxy Consulting LLC and Kleinberg, Kaplan, Wolff & Cohen, P.C. to provide proxy and legal services related to its intended solicitation. Mangrove has also moved all of its stock to a fully-paid position in order to secure its right to vote all of its shares once Penn Virginia has set a record date. On November 27, 2018, Mangrove delivered a demand letter to the Issuer requesting that the Issuer turn over copies of its shareholder records in order to facilitate Mangrove's communications with Penn Virginia's shareholders.

29.     On January 17, 2019, Mangrove filed the Mangrove Proxy seeking the Company's stockholders' support to vote against the approval of the Proposed Transaction. The Mangrove Proxy provides:

> Mangrove is soliciting proxies from holders of Penn Virginia Common Stock in opposition to the Denbury Merger. Specifically, Mangrove recommends that Penn Virginia Shareholders vote "AGAINST" the Denbury Merger Proposal and "AGAINST" the Non-Binding Compensation Advisory Proposal.

6

Mangrove is of the opinion that it would be better for Penn Virginia to remain a stand-alone company rather than accept the package of cash and securities being offered to Penn Virginia stockholders in the Denbury Merger. This opinion is based upon the following factors:

1. Mangrove believes that the proposed merger lacks industrial logic. Penn Virginia and Denbury pursue different means of oil production in different basins. As such, there is little overlap in the skills required to run these distinct businesses and no geographic overlap between them. As a result, the transaction does little to improve the operating or corporate cost structures of the combined business.

2. Mangrove believes that the proposed merger lacks financial logic. Mangrove believes that the transaction is dilutive to Penn Virginia's valuation and growth rate, and believes that the combined entity will have a higher cost structure and weaker balance sheet than Penn Virginia on a stand-alone basis.

3. Mangrove believes that Denbury's financial leverage represents and unacceptable risk for Penn Virginia Shareholders. Mangrove believes that Denbury, with its high cost structure and $2.8 billion of debt, may become insolvent should lower oil prices persist. Mangrove believes this is an ongoing investor concern that is reflected in the [17.24%] yield to worst on Denbury's 5.500% Senior Notes due 2022.

4. Mangrove believes that the shortcomings of the proposed merger are both obvious and were immediately recognized by other market participants. On the first trading day following the announcement, the common stock of Denbury Resources closed down 24% and underperformed the S&P Oil & Gas Exploration and Production Select Industry Index by over 20%. In the time since then, the underperformance of Denbury's common stock has grown to nearly [40%].

5. Rather than being paid a significant premium to accept these risks, the proposed merger effectively asks Penn Virginia shareholders to accept a discount to the current market value of Penn Virginia Shares. Penn Virginia shares have closed at a premium to the terms of the proposed merger on all but [4] trading days since the transaction was announced and have averaged a [9%] premium over the most recent 20 trading days.

Given the factors described above, Mangrove believes that Penn Virginia stockholders would be better off if the Denbury Merger Proposal was voted down and Penn Virginia continued as an independent company than if the proposed Denbury Merger were completed.

*The Registration Statement Omits Material Information*

30. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

31. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

32. The Registration Statement omits material information regarding the Company's and Denbury's financial projections and the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Jefferies LLC ("Jefferies").

33. With respect to the Company's financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate (a) Operating Cash Flow, (b) EBITDA, and (c) Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

34. With respect to Denbury's financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate (a) Operating Cash Flow, (b) EBITDA, (c) Adjusted EBITDAX; and (d) Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

35. With respect to Jefferies' Net Asset Value Analysis of Penn Virginia, the Registration Statement fails to disclose: (i) the after-tax future cash flows used by Jefferies in the analysis, including those projected to be generated by Penn Virginia's producing assets and development program, and all underlying line items; (ii) net debt; (iii) assets and liabilities; (iv) hedges; (v) general and administrative expenses; (vi) taxes; and (vii) the individual inputs and assumptions underlying the discount rates ranging from 10.8% to 12.8%.

36. With respect to Jefferies' Net Asset Value Analyses of Denbury, the Registration Statement fails to disclose: (i) the after-tax future cash flows used by Jefferies in the analyses, including those projected to be generated by Denbury's proved developed producing reserves, proved developed non-producing reserves, and undeveloped reserves, and all underlying line items; (ii) net debt; (iii) assets and liabilities; (iv) hedges; (v) general and administrative expenses; (vi) taxes; (vii) the values of surface land sales, Hartzog Draw field deep rights, industrial $CO_2$ contracts, third party $CO_2$ transportation income, North Region acceleration, additional Jackson Dome $CO_2$ sales, and Cotton Valley and Haynesville exploration; (viii) corporate adjustments; and (ix) the individual inputs and assumptions underlying the discount rates ranging from 9.1% to 11.1%.

37. With respect to Jefferies' Discounted Cash Flow Analysis of Penn Virginia, the Registration Statement fails to disclose: (i) all line items used to calculate unlevered free cash flows; (ii) the terminal value of Penn Virginia; (iii) Jefferies' basis for applying a range of multiples of Adjusted EBITDA in the terminal year of 1.75x to 2.75x; (iv) the individual inputs and assumptions underlying the discount rates ranging from 10.8% to 12.8%; and (v) projected cash, cash equivalents, and debt as used by Jefferies in the analysis.

38. With respect to Jefferies' Discounted Cash Flow Analysis of Denbury, the Registration Statement fails to disclose: (i) all line items used to calculate unlevered free cash flows; (ii) the terminal value of Denbury; (iii) Jefferies' basis for applying a range of multiples of Adjusted EBITDA in the terminal year of 5.25x to 6.25x; (iv) the individual inputs and assumptions underlying the discount rates ranging from 9.1% to 11.1%; and (v) projected cash, cash equivalents, and debt as used by Jefferies in the analysis.

39. With respect to Jefferies' Selected Companies Analyses, the Registration Statement fails to disclose: (i) the individual multiples and metrics for the companies observed by Jefferies in the analyses; and (ii) the projected cash, cash equivalents, and debt of Penn Virginia and Denbury as used by Jefferies in the analyses.

40. With respect to Jefferies' Selected Transactions Analysis, the Registration Statement fails to disclose: (i) the individual multiples and metrics for the transactions observed by Jefferies in the analysis; and (ii) projected cash, cash equivalents, and debt as used by Jefferies in the analysis.

41. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

42. The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) Recommendation of the Penn Virginia Board of Directors and Reasons for the Merger; (iii) Opinion of Jefferies, Penn Virginia's Financial Advisor; (iv) Denbury Unaudited Forecasted Financial Information; and (v) Penn Virginia Unaudited Forecasted Financial Information.

43. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to plaintiff.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Penn Virginia**

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Penn Virginia is liable as the issuer of these statements.

46. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

47. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

49. The Registration Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

50. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements in the Registration Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Denbury

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The Individual Defendants and Denbury acted as controlling persons of Penn Virginia within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Penn Virginia and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

54. Each of the Individual Defendants and Denbury was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

56. Denbury also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

57. By virtue of the foregoing, the Individual Defendants and Denbury violated Section 20(a) of the 1934 Act.

58. As set forth above, the Individual Defendants and Denbury had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: February 25, 2019

**KENDALL LAW GROUP, PLLC**

By: */s/ Joe Kendall*
Joe Kendall (Texas Bar No. 11260700)
jkendall@kendalllawgroup.com
Jamie J. Gilmore (Texas Bar No. 24045262)
jgilmore@kendalllawgroup.com
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX 75219
Telephone: (214) 744-3000
Facsimile: (214) 744-3015

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305